IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

DAVID A. WOOD, *on behalf of*     *
*himself and all persons*
*similarly situated, et al.,*      *

    Plaintiffs,               *

vs.                               *     CASE NO. 3:14-CV-43 (CDL)

UNIFIED GOVERNMENT OF ATHENS-     *
CLARKE COUNTY, GEORGIA,
                                  *
    Defendant.                *

———————————————————————————      *

O R D E R

Plaintiffs, who are retirees of Defendant Unified Government of Athens Clarke-County, Georgia ("ACC"), believe they had a deal. If they worked for ACC for the requisite number of years, they would receive premium-free health insurance benefits throughout retirement at the same level they had on their last day of employment with ACC, including dependent coverage. ACC maintains that any such deal is unenforceable because it was made without the degree of formality required under Georgia law; and if an enforceable deal does exist, ACC argues that it is different than the one Plaintiffs rely upon. As explained in the remainder of this Order, the Court finds that an enforceable deal was made but that a genuine factual dispute exists as to the terms of the

deal.  Accordingly, the parties' motions for summary judgment (ECF Nos. 53 & 55) are denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

## I.   The Health Insurance Plans

Before January 1, 1991, the City of Athens and Clarke County, Georgia operated as separate government entities with separate health insurance plans for their employees and retirees.

### A.   City of Athens Retiree Benefits

The Mayor and City Council were the governing body for the City of Athens.  In 1975, the City Council passed a resolution

stating, "[t]he requirements for hospitalization and life insurance coverage for retired employees shall be 15 or more continuous years of service with the City." Spratlin Decl. Ex. B, Resolution re Life and Hospitalization Insurance Coverage to Retired Employees (Feb. 4, 1975) ("1975 City Resolution"), ECF No. 55-4 at 56. In 1990, the City Council passed a motion adopting a finance committee recommendation stating that "employees hired July 1, 1990 or after will receive 100% health insurance coverage upon retirement with 15 years service, and will have option to obtain dependent coverage at 100% cost to retiree." Spratlin Decl. Ex. H, Council Minutes (Mar. 6, 1990) ("1990 City Motion"), ECF No. 55-4 at 217. Plaintiffs assert that this motion establishes that the City paid for retirees' dependent coverage prior to 1990 and that this practice was discontinued in 1990.

B.  Clarke County Retiree Benefits

The governing authority for Clarke County was the Board of Commissioners. In 1981, the County Commissioners approved a motion that stated: "after January 1, 1982, the County will pay the cost of the Health Insurance the individual has in effect at the time of retirement." Spratlin Decl. Ex. L, Cty. Comm'n Minutes (Nov. 24, 1981) ("1981 County Motion"), ECF No. 55-4 at 290. In 1984, the County Commissioners passed an amendment to its health insurance plan, which stated: "An employee who

qualified for Benefits under the county Employees' Retirement Plan and retires from active employment will be eligible to continue as a member of the Health Care Program without cost." Spratlin Decl. Ex. M, Cty. Comm'n Minutes (Aug. 14, 1984) ("1984 County Motion"), ECF No. 55-4 at 292. The amendment further provided: "As soon as the retiree is eligible for Medicare, the retiree and/or spouse must enroll. At this time, the Program will be excess over Medicare." *Id.* Finally, the amendment stated: "An employee obtains vested rights after 10 [continuous] years of service with Clarke County." *Id.*

C.  <u>ACC Governance and Retiree Benefits</u>

1.  *ACC Governance*

The City and County consolidated to form ACC, effective January 1, 1991. ACC's Charter contains a number of relevant provisions:

♦ "No permanent full-time employee of the City of Athens or Clarke County shall suffer any diminution of compensation resulting from the adoption of this charter. The definition of compensation includes, but is not limited to, salary, insurance and retirement benefits, annual and sick leave, and rights provided by a merit system." Charter of the Unified Gov't of Athens-Clarke Cty. ("ACC Charter") § 9-104(b), 1990 Ga. Laws 3560, 3626, ECF No. 55-2 at 16, 49.

♦ Requires ACC to ensure that all employees performing the same functions and having the same responsibilities receive uniform compensation by the end of the fourth year of ACC's operations. *Id.* § 9-104(c), ECF No. 55-2 at 49.

♦ The existing ordinances and resolutions of the City and County and their agencies that are not inconsistent with the Charter "shall continue in effect as ordinances, resolutions, rules, or regulations of Athens-Clarke County, Georgia . . . until they have been repealed, modified, or amended." *Id.* § 9-109, ECF No. 55-2 at 50.

♦ "Except as otherwise provided by this charter, all contracts . . . and other obligations or instruments entered into by Clarke County [or the City] or for its benefit prior to the effective date of this charter shall continue in effect according to the terms thereof as obligations and rights of the unified government[.]" *Id.* §§ 9-110(a) & (b), ECF No. 55-2 at 50.

### 2. *ACC Retiree Benefits*

After unification in 1991, ACC employees and retirees "received health care benefits without payment of any portion of the costs of said benefits in the form of premiums, though said employees [and retirees] have paid deductibles, co-pays, non-covered costs and other such traditional charges which are usually found in employer sponsored group health insurance programs." Spratlin Decl. Ex. S, 2002 ACC Ordinance § 1-9-19 (June 4, 2002), ECF No. 55-4 at 641. Until 2002, ACC had only one insurance plan at a time, and that plan applied to both employees and retirees.

In 2002, ACC enacted Ordinance § 1-9-19. *See generally id.*, ECF No. 55-4 at 641-47. It provided that ACC would "continue to offer premium free health care benefits" to retirees hired before December 1, 2001 who were "under the age of 65 and not receiving Medicare B benefits." *Id.* at 645. It

further provided that retirees hired before December 1, 2001 who were eligible for Medicare or "whenever they become eligible for Medicare, shall be required to elect Medicare in order to receive Athens-Clarke County health insurance coverage which will be secondary to Medicare." *Id.* at 646. Those retirees enrolled in Medicare Part B would still receive premium-free secondary health insurance through ACC. *Id.* Dependents of retirees who were hired before December 31, 1993 were "treated in the same manner as the retiree; thus, such dependents shall receive premium free insurance once said dependent qualifies and enrolls in Medicare Part B so that his or her insurance with Athens-Clarke County becomes secondary to Medicare Part B." *Id.* The 2002 ordinance stated that the premium-free secondary insurance for "retirees who were hired *after* December 1, 2001" and "dependents of retirees who were hired *after* December 31, 1993" "shall be subject to termination or modification in any respect by the Mayor and Commission in its sound discretion." *Id.* (emphasis added). The ordinance did not make a similar statement regarding retirees who were hired before December 31, 1993.

In 2013, ACC replaced Ordinance § 1-9-19. Under the new ordinance, retirees were no longer enrolled in ACC's health insurance program. Instead, retirees (and dependents of retirees hired before January 1, 1994) received contributions to

6

healthcare reimbursement accounts so they could purchase their own insurance from a marketplace. Spratlin Decl. Ex. U, 2013 ACC Ordinance § 1-9-19 (June 4, 2013), ECF No. 55-4 at 663. To receive this benefit, Medicare-eligible retirees and dependents had to elect Medicare Parts A and B and be responsible for its costs. *Id.*

## II. The Plaintiffs

It is undisputed that each of the four named Plaintiffs started working for the City of Athens or for Clarke County before the City and County consolidated to form ACC in 1991. It is also undisputed that each of the four named Plaintiffs has at least fifteen years of combined, continuous service for ACC and either the City of Athens or Clarke County. On their last day of employment with ACC, each Plaintiff was enrolled in an ACC insurance plan that excluded from coverage "[s]ervices paid under Medicare or which would have been paid if the Participant had applied for Medicare and claimed Medicare benefits." Mason Decl. Ex. A, BlueChoice Healthcare Plan Booklet 24 ¶ 37, ECF No. 55-8 at 39 (Cochran); Mason Decl. Ex. B, BlueChoice PPO Booklet 35 ¶ 38, ECF No. 55-8 at 91 (Faulkner); Mason Decl. Ex. C, BlueChoice Option Booklet 33, ECF No. 55-8 at 150 (Snipes); Mason Decl. Ex. D, BlueChoice Option Booklet 31, ECF No. 55-8 at 227 (Wood). Cochran, Faulkner, and Snipes were not eligible for Medicare when they retired.

Plaintiffs assert claims for breach of contract and claims under the Contract Clauses of the U.S. and Georgia Constitutions. U.S. Const. art. I, § 10, cl. 1; Ga. Const. art. I, § 1, ¶ X. These claims "are subject to the same analysis inasmuch as allegations of violation of the [Contract] Clause have historically been treated as raising breach of contract issues." *Borders v. City of Atlanta*, 779 S.E.2d 279, 282 (Ga. 2015).[1]

DISCUSSION

Plaintiffs argue that the various enactments by ACC, the City of Athens, and Clarke County establish as a matter of law that they and similarly situated retirees have a contract with ACC under which they are entitled to receive from ACC premium-

---

[1] The Court observes that while breach of government contract claims and impairment of contract claims may generally share an analytical framework, there are distinctions between a state law breach of contract claim and a federal impairment of contract claim. The Eleventh Circuit in *Taylor v. City of Gadsden,* 767 F.3d 1124 (11th Cir. 2014) recognized such a distinction, remarking that where the government action does not deny the plaintiffs the possibility of a damages remedy, "it would be absurd to turn [the] breach of contract . . . into a violation of the federal Constitution." *Id.* at 1136 (alterations in original) (quoting *Horwitz-Matthews, Inc. v. City of Chicago,* 78 F.3d 1248, 1250 (7th Cir. 1996)). Because this issue has not yet been raised or briefed by the parties, the Court declines to do so at this time *sua sponte*. The Court notes that even if it ultimately concludes that the availability of a remedy for breach of contract precludes Plaintiffs' federal Contract Clause claim on the merits, the Court may retain supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367. *See, e.g., Bayshore Ford Trucks Sales, Inc. v. Ford Motor Co.,* 299 F. App'x 943, 944 (11th Cir. 2008) (per curiam) (finding that a district court could properly exercise supplemental jurisdiction under § 1367 even after dismissing the federal question claim).

free health insurance benefits throughout retirement.[2]  ACC responds that no enforceable contract exists and that the Court should so find as a matter of law.  In the alternative, ACC argues that if a contract exists, its terms are different than those asserted by Plaintiffs.  Plaintiffs and ACC have moved for summary judgment, and the Court must therefore determine whether the enactments of the City of Athens, Clarke County, and/or ACC create a binding contract and, if they do, whether the record establishes as a matter of law the meaning of the terms of that contract.

## I.   Can the Enactments Plaintiffs Rely on Form a Contract?

To establish their claims, Plaintiffs must prove the existence of a contract.  *See Grady Mem'l Hosp. Co. v. Hayes*, 801 S.E.2d 55, 57 (Ga. Ct. App. 2017) (stating that a breach of contract claim requires the existence of a contract); *see also Taylor v. City of Gadsden*, 767 F.3d 1124, 1133 (11th Cir. 2014) (noting that a Contract Clause challenge requires a contractual relationship); *see also Tillman v. Mejabi*, 771 S.E.2d 110, 113 (Ga. Ct. App. 2015) ("[T]he party asserting the existence of a contract has the burden of proving its existence and its terms." (quoting *Hansen v. Doan*, 740 S.E.2d 338, 341 (Ga. Ct. App. 2013))).

---

[2] Plaintiffs argue that they are entitled to "no cost" or "cost free" health insurance benefits, but they acknowledge that this means "premium free."  Pls.' Resp. to Def.'s Statement of Undisputed Material Facts ¶ 49, ECF No. 64-1.

No single written document exists here that specifically describes the health insurance benefits that ACC and its predecessors promised to provide to their retirees. Plaintiffs instead rely on legislative enactments by the City of Athens and Clarke County to establish the requisite contract. ACC contends that because the "legislative enactments" relied upon by Plaintiffs are "resolutions" and "motions" (and not "ordinances"), these "enactments" cannot form an enforceable contract. ACC argues that *resolutions* and *motions* are not "law" because they are not ordinances. *See Allen v. Wise,* 50 S.E.2d 69, 71 (Ga. 1948) (explaining the difference between ordinances and resolutions). The Court understands that a difference may exist between an ordinance and a resolution, which is the point of the cases relied upon by ACC. But Georgia law does not appear to restrict a county, a city, or a consolidated government from entering enforceable agreements with its employees through a resolution or motion passed by a majority of the members of the governing board. ACC has not pointed the Court to any such authority, and the Court's research has found none. If a municipality prescribes a method of contracting by law or charter, then it of course must follow that method or the contract is invalid. *H.G. Brown Family Ltd. P'ship v. City of Villa Rica*, 607 S.E.2d 883, 885 (Ga. 2005). But ACC has not directed the Court to any charter of the City of Athens or any

other principle of law applying to cities or counties that provides that the City or County could *only* handle personnel matters by ordinance.[3]

The Georgia Constitution makes it clear that local governments have legislative power to adopt resolutions and regulations as well as ordinances. *See, e.g.*, Ga. Const. art. IX, § 2, ¶ I(a). Neither that Constitution, statutory law, nor case law suggests that a motion relating to retiree benefits that is approved by a majority of a governing board's members at a scheduled open meeting is not binding on the local government just because it is not an ordinance, as long as the governing board did not violate its own charter and rules in passing the motion.[4] Because ACC did not point the Court to any legal authority to the contrary and did not direct the Court to any

---

[3] ACC argues that *Taylor* answers the question of how a municipality may form a contract. It does not. Rather, the question before the *Taylor* court was whether a municipal resolution was a "law" that violated the Contract Clause, which "prohibits a State from passing any 'law' that impairs the obligation of contracts." *Taylor*, 767 F.3d at 1132. The *Taylor* court found that a municipal resolution was not a "law" that could violate the Contract Clause because it was not an ordinance. *Id.* at 1133. The Court in *Taylor* was required to determine whether a resolution is a "law" because only a "law" could impair a contract for purposes of a constitutional impairment claim. *See* U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . *Law* impairing the Obligation of Contracts . . . .") (emphasis added). Neither the U.S. Constitution, nor the Georgia Constitution, nor the Court in *Taylor* says, however, that a local government may only *enter into a contract* by ordinance.

[4] ACC makes no argument that the legislative enactments here violate O.C.G.A. § 36-30-3 ("One council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government.") And the Court does not need to address this issue because by failing to raise this argument in its motion for summary judgment and response to Plaintiffs' motion, ACC waived it.

evidence that the legislative enactments relied upon by Plaintiffs were not authorized, the Court finds that the enactments are binding and may form the basis for an enforceable contract.

## II. What are the Terms of the Contract?

Plaintiffs seek summary judgment that the legislative enactments clearly establish as a matter of law that Plaintiffs are entitled to health care benefits during retirement at the same level they received on their last day of employment and at no cost. ACC disputes this interpretation of the enactments. The Court must interpret these enactments the same way it would interpret a contract. *See Unified Gov't of Athens-Clarke Cty. v. McCrary*, 635 S.E.2d 150, 152 (Ga. 2006) (construing legislative enactments at issue here as a contract and employing the rules of contract construction); *cf. Borders*, 779 S.E.2d at 285-86 (considering enrollment provisions of pension plans created by ordinance as a contract and employing the rules of contract construction).

The first step in contract interpretation is to "decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning." *Id.* at 285 (quoting *City of Baldwin v. Woodard & Curran*, 743 S.E.2d 381, 389 (2013)). But "if the contract is ambiguous in some

respect," then "the court must apply the rules of contract construction to resolve the ambiguity." *Id.* (quoting *City of Baldwin*, 743 S.E.2d at 389).[5] "Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury." *Id.* (quoting *City of Baldwin*, 743 S.E.2d at 389). "The cardinal rule of contract construction is to ascertain the intention of the parties; however, when the contract terms are clear and unambiguous, the reviewing court looks solely to the contract itself to determine the parties' intent." *Id.* at 286. Because the City and County consolidated, the Court must interpret pre-consolidation enactments of the City and County along with enactments by ACC that adopt those pre-consolidation enactments.

A.    The City's Enactments

In support of their argument that the employment contract of City employees provided for premium-free individual and dependent health-care coverage throughout retirement at the levels they received on their last day of employment, Plaintiffs point to a 1975 resolution and a 1990 motion by the City Council stating:

---

[5] Georgia's statutory rules of contract construction are listed in O.C.G.A. § 13-2-2.

(1) "the requirements for hospitalization and life insurance coverage for retired employees shall be 15 or more continuous years of service with the City." 1975 City Resolution, ECF No. 55-4 at 56.

(2) "employees hired July 1, 1990 or after will receive 100% health insurance coverage upon retirement with 15 years of service, and will have option to obtain dependent coverage at 100% cost to retiree." 1990 City Motion, ECF No. 55-4 at 217.

Based on the plain language of the 1975 City Resolution, employees who served as City employees for fifteen or more continuous years would receive hospitalization insurance during retirement. This construction is affirmed by the 1990 City Motion, which states that employees hired after July 1, 1990 would "receive 100% health insurance coverage upon retirement with 15 years service." *Id.* The 1990 City Motion also decreased the City's share of dependent health insurance coverage for current employees and provided that employees hired after July 1, 1990 would "have option to obtain dependent coverage at 100% cost to retiree." *Id.* Reading the plain language of the 1975 City Resolution together with the 1990 City Motion, the Court finds that City employees who served for fifteen or more continuous years were to receive health insurance coverage during retirement, including dependent coverage.

B.   The County's Enactments

In support of their argument that the employment contract of County employees provided for premium-free individual and dependent health-care coverage throughout retirement at the levels they received on their last day of employment, Plaintiffs point to a 1981 motion and a 1984 motion by the County Commission stating:

(1) "after January 1, 1982, the County will pay the cost of the Health Insurance the individual has in effect at the time of retirement." 1981 County Motion, ECF No. 55-4 at 290.

(2) "An employee who qualified for Benefits under the county Employees 1 Retirement Plan and retires from active employment will be eligible to continue as a member of the Health Care Program without cost."  1984 County Motion, ECF No. 55-4 at 292.  The amendment also stated: "An employee obtains vested rights after 10 [continuous] years of service with Clarke County." *Id.*

Based on the plain language of these two enactments, individuals who served as County employees for ten or more continuous years were entitled to continue in the County's health care program without cost.

C.   ACC's Enactments

When the City and County merged to form ACC, the Charter stated that all existing ordinances, rules, and regulations of

the City and County would remain in effect and that ACC would assume the contractual obligations of the City and County. ACC Charter §§ 9-109 & 9-110, ECF No. 55-2 at 50. The Charter also stated that City and County employees should not "suffer any diminution of compensation," including retirement benefits, because of the adoption of the Charter. *Id.* § 9-104(b), ECF No. 55-2 at 49. And the Charter required ACC to ensure that all employees performing the same functions and having the same responsibilities would receive uniform compensation by the end of the fourth year of ACC's operations. *Id.* § 9-104(c), ECF No. 55-2 at 49. Based on these provisions, ACC had to resolve any differences in City and County employees' retirement benefits by applying the more generous elements of each policy. Thus, as of January 1, 1991, ACC employees had vested rights in 100% health insurance coverage during retirement, including dependent coverage, after ten continuous years of service. *Cf.* Spratlin Decl. Ex. S, 2002 ACC Ordinance § 1-9-19 (June 4, 2002), ECF No. 55-4 at 643 (stating that before 2002, ACC employees and retirees "received health care benefits without payment of any portion of the costs of said benefits in the form of premiums, though said employees [and retirees] have paid deductibles, co-pays, non-covered costs and other such traditional charges which are usually found in employer sponsored group health insurance programs").

In 1993, ACC's Commission approved a motion stating: "No employee hired on or after January 1, 1994 will be provided, upon retirement, family and dependent insurance coverage, but the employee could elect to pay for dependent coverage upon retirement." Spratlin Decl. Ex. W, ACC Minutes (Dec. 7, 1993), ECF No. 55-4 at 682. Therefore, employees hired after December 31, 1993 are not eligible for premium-free dependent coverage during retirement. And in 2002, ACC's Commission enacted ACC Ordinance § 1-9-19, which stated, in relevant part, that the premium-free insurance for retirees hired after December 1, 2001 "shall be subject to termination or modification in any respect by the Mayor and Commission in its sound discretion."[6] Spratlin Decl. Ex. S, 2002 ACC Ordinance § 1-9-19 (June 4, 2002), ECF No. 55-4 at 643-44. All of the named Plaintiffs in this action were hired before December 31, 1993.

D.  The Ambiguity

Based on the plain language of the various enactments, the Court finds that Plaintiffs were entitled to "100% health insurance coverage during retirement" if they had ten years of

---

[6] The 2002 enactment of ACC Ordinance § 1-9-19 and related changes to the Charter appears to have been effective on July 1, 2002. Spratlin Decl. Ex. S, 2002 ACC Ordinance § 1-9-19 (June 4, 2002), ECF No. 55-4 at 643 (noting that the new rules would "establish a new and different relationship between the government and employees hired after . . . June 30, 2002"). Based on the Court's review, the parties did not point to evidence of any enactment *before* December 1, 2001 regarding the alterability of retiree benefits for retirees hired after that date.

continuous employment with the City or County. The question remains as to what "100% health insurance coverage during retirement" means. Both Plaintiffs and ACC argue that this phrase is unambiguous. A "word or phrase is ambiguous when its meaning is uncertain and it may be fairly understood in more ways than one." *Healthy-IT, LLC v. Agrawal*, No. A17A1257, 2017 WL 4900562, at *4 (Ga. Ct. App. Oct. 31, 2017) (quoting *Freund v. Warren*, 740 S.E.2d 727, 731 n.4 (Ga. Ct. App. 2013)).

Plaintiffs assert that "100% health insurance coverage" means that retirees are entitled to the same level of health insurance coverage during retirement that they had on the last day of their employment at no cost to the retiree, with "level of coverage" meaning substantially similar coverage, policy limits, deductibles, and co-pays—with no obligation for the retiree to enroll in Medicare or pay Medicare premiums. ACC argues that Plaintiffs are entitled to health insurance coverage during their retirement on substantially the same terms that they had on their last day of employment. Under ACC's argument, if a Plaintiff's health insurance plan on his last day of employment excluded services covered by Medicare (like all of Plaintiffs' insurance plans did), then services covered by Medicare would likewise not be covered during retirement. Thus, once a retiree becomes eligible for Medicare, ACC is only

responsible for paying the premium for secondary insurance coverage.

The Court finds that both interpretations are reasonable. Thus, an ambiguity exists. The Court considered the rules of interpretation, but they do not resolve the ambiguity.[7] Both sides pointed to evidence of the surrounding circumstances to explain the ambiguity, but this evidence does not resolve the ambiguity. Plaintiffs pointed to evidence that in 1984, the County Commission passed an amendment to its insurance plan stating that "[a]s soon as the retiree is eligible for Medicare, the retiree and/or spouse must enroll. At this time, the Program will be excess over Medicare." Spratlin Decl. Ex. M, Cty. Comm'n Minutes (Aug. 14, 1984), ECF No. 55-4 at 292. Thus, as Plaintiffs argue, a jury could conclude that Medicare enrollment was not required for retirees who were hired before August 14, 1984. But ACC pointed to evidence that the City and the County each only had one health insurance plan at a time. All of the plan documents that were submitted to the Court excluded "services paid under Medicare or which would have been paid if the member had applied for Medicare and claimed Medicare benefits." *E.g.*, Spratlin Decl. Ex. F, 1987 City Health Ins. Booklet 9, ECF No. 55-4 at 163; Spratlin Decl. Ex. N, Cty.

---

[7] Most of the statutory rules listed in O.C.G.A. § 13-2-2 do not apply here.

Health Ins. Booklet 15 (undated), ECF No. 55-4 at 304. ACC also pointed to evidence that none of its human resources employees is aware of ACC ever paying retirees' Medicare premiums, and Plaintiffs did not point to any evidence that ACC, the City, or the County ever had a practice of paying Medicare premiums for retirees. Kincaid Decl. ¶ 3, ECF No. 55-5; Owens Decl. ¶ 3, ECF No. 55-6; Ward Decl. ¶ 3, ECF No. 55-7; Mason Decl. ¶ 3, ECF No. 55-8. A jury could therefore conclude that Medicare enrollment was required and that ACC did not undertake an obligation to pay Medicare premiums.

In summary, because there are two reasonable interpretations of what "100% health insurance coverage during retirement" means and because this ambiguity cannot be resolved using the rules of interpretation, a jury must determine the intent of the parties. Summary judgment for either side is therefore inappropriate.

### E. Are Plaintiffs' Rights Vested?

ACC argues that even if Plaintiffs' interpretation of the enactments is correct, the City and County reserved the right to alter retiree benefits through their respective Merit Plans. Therefore, any right to the healthcare benefits Plaintiffs seek never vested. *See Pulliam v. Ga. Firemen's Pension Fund*, 419 S.E.2d 918, 920 (Ga. 1992) (concluding that a provision for

subsequent amendment is part of a contract and that the rights established in such a contract are therefore not vested).

ACC argues that § XVIII of the City merit system and § XVII of the County personnel system make the retirement benefits promised through the City and County enactments alterable and therefore not vested. Section XVIII of the City merit system states: "The City of Athens makes available Health, Life and Disability Insurance to City employees. Provision of these benefits is subject to availability of an insurer and policies as adopted by Mayor and Council."[8] Spratlin Decl. Ex. D, Council Minutes adding City Merit System § XVIII(A) (Jul. 5, 1977), ECF No. 55-4 at 121. Similarly, § XVII of the County personnel system states: "Clarke County makes available Health and Life Insurance to County employees. Provision of these benefits is subject to availability of an Insurer, and policies adopted by the Board of Commissioners." Spratlin Decl. Ex. K, Ordinance Adopting Clarke Cty. Personnel Sys. § XVII(A) (Mar. 10, 1978), ECF No. 55-4 at 288. Both the City merit system and the County personnel system further state that the City and County provided "a program of retirement benefits as described in the" City or

---

[8] The original City merit system plan passed in 1974 included a section entitled "Insurance and Retirement," but it was left "To be Developed." Spratlin Decl. Ex. A, Ordinance Adopting City of Athens Merit Sys. § XVIII (June 25, 1974), ECF No. 55-4 at 42.

County pension program. *Id.;* Council Minutes adding City Merit System § XVIII(A).[9]

ACC argues that these sections of the City merit system and County personnel system plans authorized the City and County to alter any health care benefits that it provided to its employees, and thus no employee would ever have a vested right to any level of healthcare benefit. ACC's argument is flawed for the following reasons. First, ACC did not point to any evidence that any of the enactments Plaintiffs rely on were intended to be part of or affected by any provision in the City merit system or the County personnel system plans. There is no evidence that the enactments were evaluated by or proposed by a personnel board as provided for in the City merit system and the County personnel system plans. Rather, the record suggests that the enactments were passed independent of the City merit system and County personnel system plans. Both of the City enactments were proposed by the finance committee, not the personnel board.[10] 1975 City Resolution; 1990 City Motion. The 1981 County Motion was passed after a "good amount of discussion" among Commissioners when a firefighter appeared before the Commissioners to ask about health insurance for firefighters.

---

[9] Neither side pointed to evidence of any provisions in the pension plans regarding retiree health insurance benefits.

[10] In addition, the 1975 City Resolution regarding hospitalization insurance was passed *before* the City merit system plan was amended in 1977 to state that provision of employee insurance benefits was subject to change.

1981 County Motion, ECF No. 55-4 at 290. And the 1984 County Motion was recommended by the County's director of general services based on the input of the County's insurance counselor. 1984 County Motion, ECF No. 55-4 at 292. None of the enactments state that it is an amendment to the City merit system or the County merit system plans. The present record certainly does not support a finding as a matter of law that the City and County reserved the right to alter retiree healthcare benefits at any time for any reason, particularly for those persons who had already satisfied the requirements for receiving such benefits under the specific City and County enactments that directly addressed those benefits.

Second, none of the four enactments on which Plaintiffs rely relating to *retiree* health insurance benefits is inconsistent with the language of the City merit system or the County personnel system plans. Neither the City merit system nor the County personnel system indicates that employees would not receive vested benefits *in retirement* pursuant to the legislative actions taken in 1975, 1981, 1984, and 1990. Plaintiffs do not contend that ACC could not alter health insurance benefits provided to active duty employees if ACC could not for some reason obtain health insurance benefits for its employees, and they do not contend that the City or County could not decide the level of those benefits for active duty

employees.  But once those benefits were provided and were being received by an employee on his last day of employment, then those benefits became vested upon retirement as long as the retiree otherwise qualified to receive those benefits during retirement.  The City merit system and County personnel system plans, which applied to active duty employees, do nothing to change that.  ACC has pointed to no evidence in the record to establish as a matter of law that the retirement insurance benefits established by the 1975 City Resolution, 1990 City Motion, the 1981 County Motion, and the 1984 County Motion failed to vest due to the language in the City merit system or the County personnel system plans.

ACC also argues that when the City merit system and County personnel system plans were repealed in July 1991 and a new ACC personnel system was established by ordinance for the consolidated government, any retirement benefits established under the previous merit/personnel system plans were revised and were subject to change.  ACC's argument is unpersuasive.  Consistent with the Court's previous discussion, the Court finds that the 1975 City Resolution, the 1990 City Motion, the 1981 County Motion, and the 1984 County Motion provided Plaintiffs with a vested right to receive the same level of healthcare benefits upon retirement that they received on their last day of

employment.  A jury must determine what that level of benefits was intended to be.

CONCLUSION

As discussed above, the Court finds that there is a genuine fact dispute as to the terms of Plaintiffs' employment contract regarding retiree health insurance benefits.  Accordingly, both Plaintiffs' and ACC's summary judgment motions (ECF Nos. 53 & 55) are denied.  Within seven days of the date of this Order, the parties shall submit a proposed scheduling order for Phase II that sets forth specific Phase II deadlines in accordance with the schedule the parties previously agreed to in the Second Amended Scheduling Order (ECF No. 44).

IT IS SO ORDERED, this 22nd day of January, 2018.

S/Clay D. Land
_____
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA